UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NA MAIN STREET LLC,<br>EARL F HAMM, JR,<br>AFI VENTURES, LLC,<br>TAD THOMAS,<br><br>        Plaintiffs,<br><br>        v.<br><br>DAVID COOK Chairman of the Indiana<br>Alcohol and Tobacco Commission,<br>ERIC HOLCOMB Governor of Indiana,<br>CURTIS HILL Attorney General of Indiana,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:20-cv-01335-SEB-DML |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs NA Main Street LLC, Earl F. Hamm. Jr., AFI Ventures, LLC, and Tad Thomas (collectively, "NA Main Street," unless context requires otherwise) initiated this civil rights lawsuit pursuant to 42 U.S.C. § 1983 on May 7, 2020, against David Cook, Chairman of the Indiana Alcohol and Tobacco Commission; Indiana Governor Eric Holcomb; and Indiana Attorney General Curtis Hill (collectively, the "State") in their official capacities. NA Main Street challenges the constitutionality of Ind. Code §§ 7.1-3-21-5.4(a) and 7.1-3-21-6(a)(10)(B)(i), which require out-of-state limited liability companies operating Indiana retail establishments that serve alcohol by the drink to earn annual gross food sales exceeding $100,000, while not imposing any minimum food sales

requirement on Indiana limited liability companies. NA Main Street contends that these provisions violate the dormant Commerce Clause of the United States Constitution.

Now before the Court is NA Main Street's Motion for Preliminary Injunction, [Dkt. 25],[1] seeking an order enjoining enforcement of Ind. Code §§ 7.1-3-21-5.4(a) and 7.1-3-21-6(a)(10). For the reasons given below, this motion is **granted in part and denied in part.**

## Background

NA Main Street LLC owns and operates "The Earl," a restaurant and bar located in New Albany, Indiana. The Earl is a small operation run by one general manager and three part-time employees, all of whom reside in Indiana.

Prior to NA Main Street LLC's opening of The Earl, its premises were utilized to operate a retail ice cream shop. Earl F. Hamm Jr., a Kentucky resident who was, at that time, the sole owner of NA Main Street, LLC, developed a close relationship with the franchisee of the ice cream shop, an Indiana resident and the owner of the property in which the shop was housed. Following the closure of the ice cream shop, Mr. Hamm

---

[1] NA Main Street's Motion for Preliminary Injunction was filed on September 23, 2020. Having conferred with the Magistrate Judge, the State's response brief became due on November 30, 2020, and NA Main Street's reply brief was due ten days thereafter on December 10, 2020. Because NA Main Street's reply brief contained new arguments and evidence relating to its financial status, the State was entitled to file a surreply. Surreply briefs generally must be filed within seven days of the reply brief to which they are responding. *Bernadin v. Marriott Int'l Inc.*, No. 1:17-CV-02753-TWP-TAB, 2019 WL 1041333, at *4 (S.D. Ind. Mar. 4, 2019); *Strong v. Delaware Cty.*, 976 F. Supp. 2d 1038, 1044, 2013 WL 5487353 (S.D. Ind. 2013). However, seven days have passed since the filing of NA Main Street's reply brief and no surreply has been filed. The parties have jointly asserted that oral argument is unnecessary, and we agree.

decided, along with the former ice-cream-shop-franchisee whose name has not been provided, to transform the 1600 square foot property into a "bar and/or restaurant."

The franchisee contributed various construction services to the renovation project but elected not to acquire any equity ownership of NA Main Street LLC. Though Mr. Hamm previously held 100% of NA Main Street LLC's ownership interest, since transitioning the ice cream shop into a bar and restaurant, Mr. Hamm has issued 40% of the ownership to AFI Ventures, LLC, a limited liability company comprised completely of individuals residing in Kentucky. Accordingly, NA Main Street LLC is currently owned entirely by Kentucky residents, and Mr. Hamm holds the majority of its shares.

Under Indiana law, a limited liability company desiring to operate a business which serves alcoholic beverages by the drink must obtain an alcoholic beverage retailer's permit from the Indiana Alcohol and Tobacco Commission (the "Commission"). Indiana Code §§ 7.1-3-21-5.4(a) mandates that such a permit can be issued to a limited liability company only if "at least sixty percent (60%) of [its] membership interest is owned by persons who have been continuous and bona fide residents of Indiana for five (5) years." Ind. Code § 7.1-3-21-6(a)(10) provides an exception for limited liability companies, such as NA Main Street LLC, that do not meet this threshold; specifically, § 7.1-3-21-6(a)(10)(B)(i) states that the residency requirement set out in § 7.1-3-21-5.4(a) does not apply to the issuance of a permit to a limited liability company "whose annual gross food sales at the permit location . . . exceed $100,000[.]"[2]

---

[2] We note that NA Main Street has challenged Ind. Code. § 7.1-3-21-6(a)(10) in its entirety. However, this section of the Indiana code contains multiple subsections, several of which are not

3

At the time this lawsuit was filed on May 7, 2020, NA Main Street held a valid permit to sell alcoholic beverages at The Earl, initially set to expire in October 2020. In its Complaint, NA Main Street alleges that it is unable to satisfy the monetary threshold required to renew its permit, especially in light of the COVID-19 pandemic, which has been declared a public health emergency throughout the state of Indiana as of March 6, 2020. *See* IND. EXEC. ORDER. 20-02.

Entities such as NA Main Street LLC are not without some leniency from the state, however, in this regard. In response to the COVID-19 pandemic and its adverse effects on local and state businesses, Governor Eric Holcomb, on June 3, 2020, issued Executive Order 20-31, which modified various alcoholic beverage permit deadlines and requirements enforced by the Commission. In relevant part, § 7.1-3-21-6(a)(10)(B)(i) was temporarily amended to lower the statutorily-required annual gross food sales threshold from $100,000 to $66,000 for those permittees whose businesses were adversely affected by the economic impacts of the COVID-19 pandemic. However, we are informed that The Earl grossed only $10,406.58 in food sales during the relevant time period, and thus its alcoholic beverage retailer's permit is not spared by virtue of Executive Order 20-31.

On September 24, 2020, Mr. Hamm and AFI Ventures, LLC nonetheless submitted NA Main Street LLC's Application for Renewal of Alcoholic Beverage Permit, leaving unanswered the application's questions relating to residency and food sales.

---

at issue in this litigation, including § 7.1-3-21-6(a)(10)(A) and § 7.1-3-21-6(a)(10)(B)(ii). We thus have narrowed our analysis to the single subsection being challenged, that is, § 7.1-3-21-6(a)(10)(B)(i).

Despite these omissions, NA Main Street was granted an automatic renewal of its alcoholic beverage retailer's permit on October 6, 2020, thereby extending the life of the permit until October 2021. The Commission soon realized, however, that NA Main Street LLC's application had omissions of material information and, on November 24, 2020, transmitted a letter to Mr. Hamm explaining that his application had been approved in error. The letter further stated that the Commission would consider the issue of revocation of NA Main Street LLC's permit on December 15, 2020, and, if the Commission elected to issue a notice of intent to revoke, NA Main Street would be notified and provided with an opportunity to be heard pursuant to Indiana law. Consistent with Ind. Code. § 7.1-3-23-6, the Commission must provide an applicant with no fewer than ten days of notice prior to an administrative hearing on a proposed revocation.

On December 17, 2020, the Commission transmitted a second letter to Mr. Hamm. Despite the Commission's earlier notice to Mr. Hamm indicating that he would receive notice and an opportunity to be heard if the Commission "elect[ed] to issue notice of intent to revoke," this December 17, 2020 letter informed Mr. Hamm that the Commission had, on December 15, 2020, rejected his renewal application. This letter also stated that he had fifteen days from the receipt of the correspondence in which to appeal this decision.[3]

---

[3] On December 21, 2020, NA Main Street filed its Motion for Leave to Supplement Evidence, in which it requests to submit as evidence this second letter from the Commission. NA Main Street's motion is **granted.**

According to NA Main Street, it is currently impossible for The Earl to generate the requisite food sales needed to maintain its alcoholic beverage retailer's permit. NA Main Street has detailed the harms it will incur if Ind. Code §§ 7.1-3-21-5.4(a) and Ind. Code. 7.1-3-21-6(a)(10) are not enjoined and its alcoholic beverage retailer's permit consequently revoked. Unless rescinded, says NA Main Street, these requirements will force The Earl to close its doors. Having invested significant time and money into researching New Albany's food and beverage market, negotiating a lease in an area that (in a non-pandemic society) has a healthy mix of day and night traffic inviting regular business, and opening and growing The Earl in a community that is reflective of its owners' value, NA Main Street maintains that The Earl's owners and employees, as well as the New Albany community, will suffer from the loss of The Earl. In this lawsuit, NA Main Street challenges the constitutionality of the Indiana statutes whose enforcement is threatening the continued existence of The Earl.

<u>**Analysis**</u>

### I.      **Preliminary Injunction Standard**

To obtain a preliminary injunction, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). If the moving party fails to demonstrate any one of these three threshold requirements, the injunctive relief must be denied. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6,

11 (7th Cir. 1992)).  At this stage of the analysis, "the court decides only whether the plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning[.]"  *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).

If these threshold conditions are met, the Court must then assess the balance of the harm—the harm to NA Main Street if the injunction is not issued against the harm to the State if it is issued—and determine the effect of an injunction on the public interest.  *Girl Scouts*, 549 F.3d at 1086.  "The more likely it is that [the moving party] will win its case on the merits, the less the balance of harms need weigh in [its] favor."  *Id.* at 1100.

## II.    Discussion[4]

### A. *Likelihood of Success on the Merits*

The United States Constitution allocates to Congress the power to "regulate Commerce . . . .  among the several States." U.S. CONST. art. I, § 8. Though its terms "do not expressly restrain 'the several states,'" implicit in Congress's exclusive authority over interstate commerce is a restriction on states from doing the same. *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337 (2008); *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273, 108 S. Ct. 1803, 100 L.Ed.2d 302 (1988). This prohibition is commonly

---

[4] Prior to addressing the merits of this motion, the State asserts, without citation, that the Supreme Court "has recognized that it is often desirable for state courts to have the first opportunity to address the constitutionality" of a state statute. [Dkt. 32, at 1]. What Supreme Court authority the State is attempting to invoke for this principle, we do not know. However, this argument was swiftly dismissed by our court in *Indiana Fine Wine & Spirits, LLC v. Cook*, 459 F. Supp. 3d 1157, 1169 (S.D. Ind. 2020) (noting that the State had taken dictum out of context to craft this argument). It is well within federal court jurisdiction to review the constitutionality of the statutes being challenged here. *See id.*

referred to as the dormant Commerce Clause. Driven by concerns of economic protectionism, the dormant Commerce Clause prohibits "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Davis*, 553 U.S. at 338; *Granholm v. Heald*, 544 U.S. 460, 472 (2005).

Accordingly, when confronted with a challenge brought pursuant to the dormant Commerce Clause, "we ask whether the challenged law discriminates against interstate commerce." *Davis*, 553 U.S. at 338. Except in the narrowest of circumstances, "state laws that discriminate against interstate commerce face a virtually *per se* rule of invalidity." *Id.*; *Granholm*, 544 U.S. at 476. Such laws "can be sustained only on a showing that [they are] narrowly tailored to advance a legitimate local purpose." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2461 (2019) (*internal quotations omitted*). In contrast, statutes which merely burden interstate commerce in the course of advancing a legitimate state interest may be upheld if the state interest outweighs the burden on interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) . These non-discriminatory statutes "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative  local benefits," *Davis*, 553 U.S. at 353 (*citing Pike*, 397 U.S. at 142). "State laws frequently survive this *Pike* scrutiny[.]" *Id.* (collecting cases).

We thus begin our analysis by asking whether Ind. Code §§ 7.1-3-21-5.4(a) and 7.1-3-21-6(a)(10)(B)(i) discriminate against interstate commerce by mandating disparate treatment of in-state and out-of-state economic actors. *Granholm*, 544 U.S. at 472. The Seventh Circuit has explained that "state and local laws fall into one of three categories

for purposes of a dormant Commerce Clause analysis." *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017). Specifically:

> The first category comprises laws that explicitly discriminate against interstate commerce; laws of this type are treated as presumptively unconstitutional. The second category comprises laws that appear to be neutral among states but that bear more heavily on interstate commerce than on local commerce. Facially nondiscriminatory laws sometimes have a discriminatory effect on interstate commerce, and when the effect is powerful, acting as an embargo on interstate commerce without hindering intrastate sales, the law is treated as the equivalent of a facially discriminatory statute. On the other hand, laws that are facially nondiscriminatory but have mild disparate effects and potential neutral justifications are analyzed under *Pike*[.]

*Id.* (*internal quotations and citations omitted*).

The parties do not dispute that the plain language of the statutes at issue in this litigation is facially discriminatory. Thus, we have no difficulty concluding that §§ 7.1-3-21-5.4(a) and 7.1-3-21-6(a)(10)(B)(i) fall within the first category by explicitly discriminating against interstate commerce through the enactment of their residency and minimum sales requirements.

With respect to the residency requirement codified at § 7.1-3-21-5.4(a), it is clear beyond dispute that a state law imposing such a requirement in this context is explicitly discriminatory. *Tennessee Wine & Spirits*, 139 S. Ct. at 2474 (finding that Tennessee's two-year durational residency requirement was expressly discriminatory against nonresidents); *Granholm*, 544 U.S. at 466-67 ("The differential treatment between in-state and out-of-state wineries constitutes explicit discrimination against interstate commerce.").

Indeed, the constitutionality of a nearly identical statute was adjudicated in a recent lawsuit presided over by our colleague, the Honorable Tanya Walton Pratt *See Indiana Fine Wine & Spirits, LLC v. Cook*, 459 F. Supp. 3d 1157 (S.D. Ind. 2020). There, Judge Pratt reviewed Indiana's prohibition on the issuance of "an alcoholic beverage dealer's permit of any type for the premises of a package liquor store to a limited liability company unless at least sixty percent (60%) of the outstanding membership interest in the limited liability company is owned by persons who have been continue and bona fide residents of Indiana for five (5) years[.]"  That statute, like the one at issue, facially discriminated against out-of-state limited liability companies and thus could be saved only if there was a "legitimate local purpose that [could not] be adequately served by reasonable nondiscriminatory means." *Id.*  (*quoting Granholm*, 544 U.S. at 489).

By requiring limited liability companies, whose non-resident ownership share is equal to or greater than 40%, to gross at least $100,000 annually in food sales, while imposing no similar requirement on residents,[5] Ind. Code. § 7.1-3-21-6(a)(10)(B)(i)  is discriminatory on its face by burdening out-of-state limited liability companies. NA Main Street asserts that compliance with this provision would require expenditures of significant resources, including resources to invest in cooking equipment, to expand seating at The Earl for dining, and to hire cooking and wait staff. The statute imposes no such food sales quotas on local establishments. Such differentiated treatment between in-

---

[5] Bars and restaurants owned by Indiana limited liability companies are required to sell food at their establishments; however, no minimum sales requirement is imposed upon these in-state owners. *See* Ind. Code.  § 7.1-3-20-9(a).

state and out-of-state bar and restaurant owners constitutes explicit discrimination against interstate commerce. *Granholm*, 544 U.S. at 467

Though the State does not dispute that the statutes at issue are, on their face, discriminatory,[6] it nonetheless presents, albeit half-heartedly, an argument favoring the less onerous balancing test articulated in *Pike* to the challenged statutes. The State contends that, because the statutes "serve several legitimate purposes," they are not discriminatory. [Dkt. 32, at 5]. However, a statute that serves a legitimate purposes does not necessarily foreclose discrimination. It is instead the legitimate purpose of the statute that might operate to save an otherwise discriminatory statute from being held unconstitutional. *See Granholm*, 544 U.S. at 489.

The State further contends that the discriminatory effect of the statutes is minor, entitling them to review under *Pike*.  However, a statute with a mild discriminatory effect triggers *Pike* balancing *only* if the statute is facially nondiscriminatory. *Park Pet Shop*, 872 F.3d at 501. We reiterate that the State has not disputed that both statutes are facially discriminatory. Thus, *Pike* does not apply.

For these reasons, we hold that the requirements set out in Ind. Code §§ 7.1-3-21-5.4(a) and 7.1-3-21-6(a)(10)(B)(i) clearly discriminate against interstate commerce.

---

[6] The State concedes "that this Court's opinion in *Ind. Fine Wine & Spirits v. Cook*., 1:20-cv-00741-TW-MJD . . . enjoined the enforcement of Ind. Code. § 7.1-3-21-5.4(b), a residency requirement similar to the statute at issue in the present case," while offering no reason for a different result here. We also note that the State did not pursue an appeal of either the preliminary or permanent injunctions enjoining the enforcement of Ind. Code. § 7.1-3-21-5.4(b), and the time to do so has expired.

Accordingly, they can withstand scrutiny as to their constitutionality only if, as previously stated, they are narrowly tailored to serve legitimate purposes.

Because the statutes at issue here involve the State's regulation of alcohol, we shall next address whether the powers reserved to the states under the Twenty-first Amendment justify the prohibitions on in-state protectionism as contemplated in the dormant Commerce Clause. *Indiana Fine Wine & Spirits*, 459 F. Supp. 3d at 1165.

Section 2 of the Twenty-first Amendment provides, "[t]he transportation or importation in any State, Territory, or Possession of the United States for delivery or use therein of intoxicating liquors, in violations of the laws thereof, is hereby prohibited." The aim of this section is "to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use." *Granholm*, 544 U.S. at 484. The State thus contends here that the "minimum food sale and residency requirements are a valid exercise of Indiana's broad authority under the Twenty-first Amendment to regulate alcoholic beverages within its borders." [Dkt. 32, at 10].

The State forgets, however, that "the aim of § 2 was not to give States a free hand to restrict the importation of alcohol for purely protectionist purposes." *Tennessee Wine & Spirits Retailers*, 139 S. Ct. at 2469. Indeed, the State appears to ignore all the modern Supreme Court precedents that repeatedly have rejected the view that § 2 shields discriminatory state laws from dormant Commerce Clause doctrine, despite the latitude granted to states with respect to alcohol regulations. *Id.* at 2470 (collecting cases). These precedents make clear that a state's authority to regulate alcohol under the Twenty-first Amendment "is limited by the non-discrimination principle in the Commerce Clause,"

"foreclose[ing] any contention that § 2 of the Twenty-first Amendment immunizes discriminatory [] laws from Commerce Clause scrutiny[.] *Id.*; *Granholm*, 544 U.S. at 487-488, 492-493.

The State proffers no explanation for why this framework does not guide our analysis here. Accordingly, we reject the State's argument that the Twenty-first Amendment operates as a complete defense to NA Main Street's claims, regardless of whether the statutes would otherwise falter from a constitutional analysis.

Because the Twenty-first Amendment "does not confer limitless authority to regulate the alcohol trade," *Tennessee Wine & Spirits Retailers*, 139 S. Ct. at 2474, we turn next to a consideration of the State's proffered "legitimate purposes" in defense of its discriminatory statutes. States are authorized "to address alcohol-related public health and safety issues in accordance with the preferences of its citizens." Thus, we look to whether the challenged statutes before us can "be justified as a public health or safety measure or some other legitimate nonprotectionist ground" that could not be achieved through nondiscriminatory alternatives. *Id.* at 2471, 2474 ("[P]rotectionism, we have stressed, is not such an interest."); *see also Granholm*, 544 U.S. at 489. For the discriminatory statutes to be upheld, the State must direct the Court to "concrete evidence" that the statutes actually do promote public health or safety; "unsupported assertions" or "mere speculation" are insufficient. *Tennessee Wine & Spirits Retailers*, 139 S. Ct. at 2474; *Granholm*, 544 U.S. at 490 ("Without concrete evidence that direct shipping of wine is likely to increase alcohol consumption by minors, we are left with the States' unsupported

assertions. Under our precedents, which require the "clearest showing" to justify

discriminatory state regulation  . . .  this is not enough.")

Here, the State advances several justifications for the statutes—including its desire

to expeditiously establish personal jurisdiction over non-residents, to monitor alcohol

sales, and to encourage moderation in drinking. Critically, however, none of these

attempted justifications are supported by even a scintilla of concrete evidence. Basing its

justifications for these statutes on a need to "promote accountability" in alcohol sales, the

State argues that one could "reasonably conclude" that the challenged statutes serve this

purpose because "[u]nlike residents, absentee owners may not share in the State's interest

in maintaining an orderly liquor market" and "perhaps [would] flaunt Indiana's policy of

moderation." [Dkt. 32, at 7, 15].

These attempts at justification rest on pure speculation, however, unsupported by

any evidence legitimizing the State's concerns. The State posits that "[b]y requiring a

certain percentage of the ownership of an LLC that holds an alcohol beverage permit to

be Indiana residents, the State does not have to expend more resources in policing alcohol

sales and consumption." [Dkt. 32, at 7-8]. We note, again, however, that the record before

us is devoid of any evidence supporting this contention.

The State argues that the residency and minimum food sale requirements "increase

the likelihood that permit holders would be able to effectively curtail alcohol abuse and

prevent underage drinking, and that tax revenue collection may be easier, if the majority

of license holders have an established presence in the state." [Dkt. 32, at 8]. Despite

advancing this argument, the State concedes that the Supreme Court has expressly

rejected such grounds for achieving the State's alleged purposes, making them an insufficient basis on which to uphold otherwise discriminatory laws under the dormant Commerce Clause.[7] *See Tennessee Wine & Spirits Retailers*, 139 S. Ct. at 2475-76; *Granholm*, 544 U.S. at 489-490.  The State omits any analysis in its briefing that would explain why these Supreme Court precedents are not controlling here.  Similarly lacking is any attempt to distinguish between the circumstances presented here and those addressed by the Supreme Court in *Granholm* and *Tennessee Wine & Spirits Retailers.*[8]

Other justifications for these statutory restrictions proffered by the State are similarly unpersuasive. For example, the State argues that the residency requirement ensures that state attorneys can easily establish personal jurisdiction over restaurant and bar owners who violate Indiana's alcohol laws. However, given that the regulated restaurants and bars operate in Indiana, no personal jurisdiction issues relating to their owners are likely to arise, irrespective of the owners' residencies. *See* IND. TRIAL. R. 4.4 (A) ("Any person or organization that is a nonresident of this state  . . . submits to the jurisdiction of the court of this state to any action arising from  . . . [d]oing business in this state; [c]ausing personal injury or property damages  . . . within this state; . . .

---

[7] We also note that this precise argument was rejected by our Court in *Indiana Fine Wine & Spirits*. 459 F. Supp. 3d at 1169.

[8] The State makes passing reference to the holding in *Indiana Fine Wine & Spirits*, noting that it did not address the manner in which the State's oversight needs were furthered by the minimum food sales requirement at issue here. But that reflects the entirety of the State's analysis of this issue. Conspicuously lacking is any evidence demonstrating the way or the extent to which this requirement advances the purported oversight needs.

deriv[ing] substantial revenue or benefit from . . . services used, consumed, or rendered in this state; . . . [o]wning, using, or possessing any real property . . . within this state.")

In sum, the crux of the State's defense of these statutory requirements seems to be that a level of supplemental "oversight" is necessary over limited liability companies owned by non-residents in order to maintain public safety when alcohol is involved. That assertion remains nothing more than a theory, however, because it is buttressed by absolutely *no* evidence to show either that non-residents are more likely to serve alcohol recklessly or that the challenged statutes successfully curtail such recklessness. *Granholm*, 544 U.S. 490. (rejecting justification for discriminatory statutes when there was no evidence establishing that out-of-state wineries endangered public any more than in-state wineries). Because the State's proffered laundry list of "legitimate purposes"[9] cited as its justification of the obviously discriminatory statutes lacks any evidentiary support, we will not expend further judicial efforts to address them.[10]

We harbor few doubts that the State possesses viable, non-discriminatory options by which to advance its referenced health and safety purposes, including, for example, "limiting the number of [] licenses and limiting the amount of alcohol that can be sold to an individual" as well as "mandat[ing] training for managers and employees" who serve

---

[9] The State also advances, for example, the need to monitor alcohol sales. However, the challenged statutes plainly do not involve monitoring the sale of alcohol. Further, in response to the State's contention that food consumption may encourage individuals to drink moderately, the briefing omits any evidentiary substantiation for differentiating between regulations of bars and restaurants based on the residency of their owners.

[10] We note in passing that the State offers no rationale for the statutory percentile requirement, and we are at a loss in attempting to conjure up a reason as to why a limited liability company owned 40% by non-residents is more likely to engage in reckless alcohol distribution than a company owned 35% by non-residents. So far as we can tell, this distinction is arbitrary.

alcohol at restaurants and bars in Indiana. *Indiana Fine Wine & Spirits*, 459 F. Supp. 3d at 1167. *See also Granholm*, 544 U.S. at 492 ("Michigan and New York offer a handful of other rationales, such as facilitating orderly market conditions, protecting public health and safety, and ensuring regulatory accountability. These objectives can also be achieved through the alternative of an evenhanded licensing requirement."); *Tennessee Wine & Spirits Retailers*, 139 S. Ct. at 2476 (concluding that residency requirements are "ill suited to promote responsible sales consumption practices," and that there are "obviously alternatives that better serve that goal without discriminating against non-residents).

For these reasons, we conclude that NA Main Street is highly likely to succeed on the merits of its claims that §§ 7.1-3-21-5.4(a) and 7.1-3-21-6(a)(10)(B)(i) are violative of the dormant Commerce Clause.

### B. Irreparable Harm and Inadequate Remedy at Law

Having shown a likelihood of success on the merits of its claim that §§ 7.1-3-21-5.4(a) and 7.1-3-21-6(a)(10)(B)(i) violate the dormant Commerce Clause, NA Main Street must also establish that, without preliminary injunctive relief, it will suffer irreparable harm for which there is no adequate remedy of law. "[H]arm is considered irreparable if it 'cannot be prevented or fully rectified by the final judgment after trial.'" *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017) (quoting *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1089). To establish that it has no adequate remedy at law, NA Main Street must show that any award would be "seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003).

NA Main Street asserts that the continued enforcement of §§ 7.1-3-21-5.4(a) and

7.1-3-21-6(a)(10)(B)(i) violates its constitutional rights, thus imposing an irreparable

harm as a matter of law. Indeed, it is well-established that "[t]he existence of a continuing

constitutional violation constitutes proof of an irreparable harm[.]" *Preston v. Thompson*,

589 F.2d 300, 303 n.3 (7th Cir. 1978).

NA Main Street also contends that it will continue to suffer irreparable harm as a

matter of fact, because without injunctive relief, NA Main Street is ineligible to maintain

its alcoholic beverage retailer's permit and will be forced to close The Earl, a business in

which it has invested significant resources of time and money (over $100,000) in order to

open and operate it.  That process has entailed no small amount of effort to research the

New Albany food and beverage market, to renovate the former ice cream parlor, to

develop branding and marketing materials, and to build a successful reputation as well as

relationships within the community. Even if it is successful on the merits of its legal

claims in this litigation, NA Main Street will be unable to recover the costs it has incurred

in establishing The Earl enterprise. One other significant consideration applies to the

analysis of their request for injunctive relief, they say: because this lawsuit is framed

against state officials in their official capacities, and because Eleventh Amendment

sovereign immunity shields these individuals from liability for compensatory damages,

NA Main Street has no adequate remedy at law. *Indiana Fine Wine & Spirits*, 459 F.

Supp. 3d at 1170.

The State responds that its administrative and judicial review procedures provide

NA Main Street with an adequate remedy at law. Further, had NA Main Street not

"fail[ed] to fully explore the administrative process provided under Indiana law," and if instead it had allowed those procedures to "run [their] course," any harms suffered by NA Main Street would likely have been alleviated. [Dkt 32, at 11-12, 14].

It is unclear to us precisely how the State's administrative procedures would provide an adequate remedy at law or alleviate the irreparable harm in this case, an assertion made by the State without citation to any authorities. We know of no exhaustion requirement that plaintiffs must satisfy before seeking injunctive relief for § 1983 claims such as those presented here; the general rule, in fact, "is that plaintiffs may bring constitutional claims under § 1983 without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available." *Knick v. Twp. of Scott, Pa*., ––– U.S. ––––, 139 S. Ct. 2162, 2172–73, 204 L.Ed.2d 558 (2019). We, thus, on prior occasions, have rejected the argument that "pursuing in state court the relief sought here provides an adequate remedy at law." *Indiana Fine Wine & Spirits*, 459 F. Supp. 3d at 1170.

The State's characterization of NA Main Street's lawsuit as "premature" based on the fact that its permit has not yet been revoked is similarly unavailing. It is undisputed that NA Main Street LLC is ineligible to renew its permit under the challenged statutes (even as modified by virtue of Executive Order 20-31). The inadvertent renewal of its permit has been reviewed by the Commission, who determined that NA Main Street LLC's application should be rejected. [Dkt. 32, at 12, 14; Dkt. 37, Exh. C]. The State has not indicated any intention of foregoing enforcement of its residency and minimum food sales requirements with regard to NA Main Street or any other business similarly

19

situation. Thus, NA Main Street LLC clearly faces a concrete risk that its alcoholic beverage retailer's permit will be revoked. *See Indiana Fine Wine & Spirits*, 459 F. Supp. 3d at 1168.[11]

The State (wisely) has not attempted to rebut the well-established principle that the enforcement of unconstitutional laws by itself imposes an irreparable harm, nor that NA Main Street is barred by the Eleventh Amendment from recovering monetary damages from the State.

Accordingly, we hold that NA Main Street has satisfied its burden of showing that, absent injunctive relief, it is suffering and will continue to suffer irreparable harm for which no adequate legal remedy exists.

### C. Balancing of Harms and the Public Interest

The final factor entitling a petitioner to injunctive relief requires the Court to "compare the potential irreparable harms faced by both parties to the suit—the irreparable harm risked by the moving part in the absence of a preliminary injunction against the irreparable harm risked by the nonmoving party if the preliminary injunction is granted." *Girl Scouts of Manitou Council, Inc*, 549 F.3d at 1100. This balancing function also involves a consideration of whether an injunction would be in the public interest. *Id.*

NA Main Street argues that an injunction would serve the public interest by halting the enforcement of these unconstitutional statutes. Additionally, NA Main Street

---

[11] The State has also briefly alludes to Governor Holcomb's Executive Order 20-31, which modified the minimum sales requirement, arguing that that action or avenue provides an adequate remedy. However, this modification does not address, much less redress the discrimination claims sought to be vindicated in this lawsuit.

maintains that the public has an interest in the survival of a small business like itself, to which the New Albany community has become emotionally attached.

The State acknowledges that "[e]nforcing a constitutional right is in the public interest," *Whole Women's Health All. v. Hill*, 937 F.3d 864, 875 (7th Cir. 2019), but nonetheless argues that "the laws Plaintiffs seek to enjoin are not unconstitutional." [Dkt. 32, at 14]. However, having previously determined that NA Main Street is likely to succeed on the merits of its constitutional claims, we will not revisit here the State's arguments in favor of the statutes' constitutionality.

The State also asserts that its "interest is in large part presumed to be the public's interest, [Dkt. 32, at 14 (*quoting United States v. Rural Elec. Convenience Coop. Co.*, 922 F. 2d 429, 440 (7th Cir. 1991), cautioning the Court to consider that "all judicial interference with a public program has the cost of diminishing the scope of democratic governance." [*Id.* (quoting *Ill. Bell. Tel. Co. vo. WorldCom Techs.*, Inc, 157 F.3d 500, 503 (7th Cir. 1998)].

Now appropriately cautioned, the Court reminds the State that there is "no harm to a [government agency] when it is prevented from enforcing an unconstitutional statute." *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004); *see also Does v. City of Indianapolis*, Case No. 1:06-CV-865-RLY-WTL, 2006 WL 2927598, at *11 (S.D. Ind. Oct. 5, 2006) ("Defendants will not be harmed by having to conform to constitutional standards, and without an injunction, Plaintiffs will continue to be denied their constitutional rights."). We find no identifiable harm that will be suffered by the State from the issuance of a preliminary injunction in this case.  To the contrary, without

injunctive relief, NA Main Street will continue to be subject to the State's violation of its constitutional rights under the dormant Commerce Clause as well as the loss of its economic and reputational investments.

Accordingly, we hold that the balance of harms weighs in favor of NA Main Street as well as the public interest, which finding supports the issuance of an injunction against the continued enforcement of the referenced statutes before us for review.

## CONCLUSION

Plaintiffs have satisfied all of the legal elements entitling them to a preliminary injunction. Their motion [Dkt. 25] is, therefore, **granted in part and denied in part.** Enforcement of the residency and minimum food sales requirements codified at Ind. Code § 7.1-3-21-5.4(a) and 7.1-3-21-6(a)(10)(B)(i) shall be enjoined. Enforcement of Ind. Code § 7.1-3-21-6(a)(10) in all other respects is not enjoined, given that Plaintiffs' motion before us here addressed only the above-cited, single subsection of this statutory provision. The specific scope of the injunction is set forth in a separate, accompanying order.

Plaintiffs' Motion for Leave to Supplement Evidence [Dkt. 37] is **granted.** IT IS SO ORDERED.

Date:     12/22/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Joseph Beutel
EPSTEIN COHEN SEIF & PORTER
joe@beutellaw.com

Robert David Epstein
EPSTEIN COHEN SEIF & PORTER
rdepstein@aol.com

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
Jefferson.Garn@atg.in.gov

Jill Gagnon Haddad
INDIANA ATTORNEY GENERAL
jill.haddad@atg.in.gov

Lauren Ashley Jacobsen
INDIANA ATTORNEY GENERAL
lauren.jacobsen@atg.in.gov

James E. Porter, II
EPSTEIN COHEN SEIF & FLORA
james@jeporterlaw.com

James Alexander Tanford
EPSTEIN COHEN SEIF & PORTER
tanfordlegal@gmail.com